UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

| | |
|---|---|
| PHILLIP SARAFOLEAN, ) | |
| ) | |
| Petitioner, ) | Civil No. 0: 18-71-HRW |
| ) | |
| V. ) | |
| ) | |
| J.C. STREEVAL, Warden, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Respondent. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Inmate Phillip Sarafolean has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge the calculation of his prior custody credits by the Bureau of Prisons ("BOP"). [D. E. No. 1] This matter is before the Court to conduct the screening required by 28 U.S.C. § 2243. *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011).

In March 2015, a federal grand jury in Chattanooga, Tennessee issued an indictment charging Sarafolean with conducting a conspiracy to traffic in methamphetamine in concert with seven other persons, as well as related drug trafficking and weapons charges. Sarafolean reached an agreement with the government to plead guilty to a single count of conspiracy, and in April 2016 the trial court sentenced him to 70 months imprisonment. *United States v. Sarafolean*, No. 1: 15-CR-16-HRM-SKL-1 (E.D. Tenn. 2015).

1

Before his federal prosecution, Sarafolean was on Tennessee probation for an unidentified prior state offense. The BOP indicates that in July 2014 Sarafolean committed a Domestic Assault, which resulted in the revocation of his probation in October 2014. The state court imposed an 11-month and 29-day sentence, but suspended this sentence to probation. Regardless, Sarafolean remained in state custody because other state charges were pending against him. [D. E. No. 1-4 at 5] Sarafolean has offered a more complex account that involves the filing and dismissal of numerous state charges, including for new offenses and violations of the terms of his probation, and interrupted periods of custody. However, Sarafolean's account confuses rather than clarifies his custodial history as it fails to identify with particularity the offenses involved, the state case numbers applicable to each, and the interaction between these numerous state criminal proceedings against him. [D. E. No. 1-4 at 9]

After the federal sentence was imposed, Sarafolean was returned to state custody to serve the remainder of another state sentence, although petitioner does not identify which sentence this was. Upon completion of that state sentence, on September 21, 2016 Sarafolean was transferred to BOP custody to begin service of his federal sentence. *Id.* At some point thereafter, Sarafolean's counsel filed a "Post-Conviction Motion" in the Sessions Court of Hamilton County, Tennessee, although the factual and legal basis for that motion is unknown. In March 2018 the state court

issued an Order stating that: (1) Sarafolean was "in custody from December 15, 2014 until June 21, 2015 and **this credit was applied toward and satisfied the probation violation sentence**"; (2) would impose only a 10-day sentence for violating the terms of his probation; (3) that Sarafolean had already served this sentence from December 15 to 25, 2014; and (4) that Sarafolean's time in custody from December 26, 2014 to June 21, 2015 would "not apply" towards service of his probation revocation sentence. [D. E. No. 1-3 at 2-3 (emphasis added)]

On this basis of the state court's Order, Sarafolean filed an inmate grievance requesting that the BOP credit time he spent in state custody from December 26, 2014 through June 13, 2015 against his federal sentence. The BOP denied that request on June 4, 2018, noting that as a matter of *federal* law rather than Tennessee law, time Sarafolean spent in state custody during this period had already been credited against his revocation sentence within the meaning of 18 U.S.C. § 3585(b) notwithstanding the state court's order as a matter of *state* law. [D. E. No. 1-4 at 5] Sarafolean appealed that determination on June 12, 2018, but had not received a response by June 29, 2018, the day he signed the petition he filed in this Court.

In his petition and in an accompanying letter, Sarafolean acknowledges that he has not yet exhausted his administrative remedies with respect to his claim. He asserts, however, that not only cannot he not wait for the BOP to address his inmate grievance and appeal, but that this Court must rule in his favor within 90 days or he

will lose his eligibility to receive a 12-month placement in a halfway house. [D. E. 1 at 7; No. 1-6] Although Sarafolean does not disclose it in his petition, just before he filed his petition in this case he filed a motion seeking identical relief regarding his sentence computation in the federal trial court. *United States v. Sarafolean*, No. 1: 15-CR-16-HRM-SKL-1 (E.D. Tenn. 2015) [D. E. No. 294 therein]. That motion remains pending in that Court as of this writing.

Having thoroughly reviewed the petition and the materials Sarafolean has attached in support of it, the Court concludes that it should be denied, without prejudice, at this juncture to permit him to fully exhaust his administrative remedies and fully develop the administrative record prior to judicial review.

Before a prisoner may seek habeas relief under Section 2241, he must exhaust his administrative remedies within the Bureau of Prisons. *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006); *Campbell v. Barron*, 87 F. App'x 577, 577 (6th Cir. 2004). Administrative remedies must be exhausted prior to filing suit and in full conformity with the agency's claims processing rules. *Woodford v. Ngo*, 548 U.S. 81, 92-94 (2006). The purpose of the exhaustion requirement is to ensure that the agency has an opportunity to review and revise its actions before litigation is commenced, which preserves both judicial resources and administrative autonomy, and also to ensure that a court reviewing the agency's final action does so upon a developed and complete evidentiary record. *Noriega-Lopez*

4

*v. Ashcroft*, 335 F. 3d 874, 881 (9th Cir. 2003); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761-62 (3d Cir. 1996).

In his petition, Sarafolean concedes that he did not both initiate and complete the BOP's inmate grievance process. The judicially-crafted exhaustion requirement applicable to habeas petitions asserted under Section 2241 is subject to certain equitable exceptions. Petitioner suggests that it would futile to exhaust his administrative remedies because his claim would become moot before he could complete the BOP's appeal process. The Court disagrees. The "futility" exception upon which Sarafolean apparently relies applies only in certain narrowly-defined circumstances. Specifically, a court may waive the exhaustion requirement as futile where there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 689-90 (E.D. Ky. 2004) (*citing James v. United States Dept. of Health and Human Services*, 824 F.2d 1132, 1139 (D.C. Cir. 1987). These circumstances are not present here.

This case underscores the importance one of the core values that the exhaustion requirement is designed to serve: ensuring that the Court has an adequate record before it to review the agency action in question. *Woodford*, 548 U.S. at 89. Here, Sarafolean has provided the Court with some, but by no means all, of the state

court records necessary to understand the convoluted history of his custodial detentions and criminal proceedings before the courts of Tennessee. In addition, in the Court's experience it is usually only upon an appeal to the BOP's regional office that the computation of a federal inmate's prior custody credits is referred to the BOP's Designation and Sentence Computation Center in Grand Prairie, Texas for a more thorough review. Only after that review is complete and a final review is conducted by the BOP's Central Office will Sarafolean and the Court be possessed of a complete understanding of this calculation. Without a full administrative record explaining the BOP's actions and the reasons therefor, the Court lacks an adequate evidentiary basis upon which to review the claims asserted in the petition.

Nor is it true that the BOP will not decide his appeals until after his eligibility for placement into a halfway house has passed. The Mid-Atlantic Regional Office must respond to his June 12, 2018 appeal within 30 days, and the Central Office must respond to any appeal to it within 40 days. 28 C.F.R. § 542.18. Assuming Sarafolean appeals promptly should MARO deny his appeal, his inmate grievances should be exhausted by early September, particularly as he may treat a failure by the BOP to timely respond as a denial. *Id.* Because Sarafolean's prison sentence was comparatively short, the BOP will not likely approve more than 90-120 days placement in a halfway house, a period he will enjoy the full benefit of prior to his currently projected release date in July 2019.

6

Because there are insufficient grounds to excuse compliance with the exhaustion requirement, the Court will deny the petition without prejudice so that Sarafolean may complete the inmate grievance process in its entirety prior to filing his petition.

Accordingly, it is **ORDERED** as follows:

1. Petitioner Sarafolean's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [D. E. No. 1] is **DENIED WITHOUT PREJUDICE**.

2. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

3. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

This 11th day of July, 2018.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge